393 So.2d 459 (1980)
Foye L. LOWE, Jr.
v.
David C. TREEN, Governor.
No. 14238.
Court of Appeal of Louisiana, First Circuit.
December 19, 1980.
Writ Refused February 13, 1981.
Foye L. Lowe, Jr., pro se.
David C. Treen, Governor, of Louisiana, William J. Guste, Atty. Gen., Kenneth DeJean, Asst. Atty. Gen., Baton Rouge, for appellant.
Before COVINGTON, CHIASSON, EDWARDS, LEAR and COLE, JJ.
PER CURIAM.
This is an appeal by plaintiff from a judgment denying his request for injunctive relief and dismissing his suit for a declaratory judgment.
Mr. Lowe filed suit on November 25, 1980. He contends that Louisiana's statutes which govern the selection of presidential electors, and particularly LSA-R.S. 18:1253 D, 18:1258 (second sentence), and 18:1261 A, are unconstitutional. He asked that the defendant, Honorable David C. Treen, Governor of Louisiana, be enjoined from issuing certificates of election under R.S. 18:1261 B.
We will first consider the matter of injunctive relief. The Governor issued the certificates of election to the members of the electoral college on December 8, 1980, pursuant to 3 U.S.C. § 7. Accordingly, that matter is now moot. Appellee has filed, in this Court, a motion to dismiss on the ground of mootness and has attached thereto certified documents showing that the act sought to be enjoined has occurred. The court will not rule on the substance of a moot issue; Cain v. Board of Supervisors of Elections, Ouchita Parish, 335 So.2d 711 (La.App. 2 Cir. 1976); Boothe v. Board of Supervisors of Elections for the Parish of Catahoula, 341 So.2d 1297 (La.App. 3 Cir. 1977).
Appellee has also filed a peremptory exception of no cause of action in this court. We overrule the exception.
The constitutionality of our statutes are attacked on the basis that under a "winner take all" system, whereby the candidate receiving the greatest number of popular *460 votes receives all of the electoral votes, the persons who vote for candidates who receive a lesser proportion of the total vote are thus disenfranchised. Appellant cites a theoretical event in Louisiana under which there were four candidates for President, three of whom received 242/3% of the total votes cast and one received 26%, the latter would receive all of our ten electors. He contends, at least inferentially, that it violates the "one person-one vote" (sometimes called "one man-one vote") rule. Thus, he says, it effectively deprives the some 750,000 persons in Louisiana who voted for electors representing other presidential candidates than President-elect Reagan of their right to vote. Appellant contends that the electors should be required to cast their votes in the fractional parts necessary to reflect the fractional popular vote.
Proportional representation is not the sine qua non of a republican form of government. By participating in our election processes, one agrees to be governed by the will of the majority. For example, congressmen are elected from single member districts and the one with a majority vote wins. Weighing of votes was even sanctioned by Justice Douglas. See Gray v. Sanders, 372 U.S. 368, 83 S.Ct. 801, 9 L.Ed.2d 821 (1963), where he said, at page 808:
"The only weighting of votes sanctioned by the Constitution concerns matters of representation, such as the allocation of Senators irrespective of population and the use of the electoral college in the choice of a President."

(Emphasis supplied)
Also, see Penton v. Humphrey, 264 F.Supp. 250 (S.D.Miss.1967), which, with approval, also quotes the above language of Justice Douglas.
Wesberry v. Sanders, 376 U.S. 1, 84 S.Ct. 526, 11 L.Ed.2d 481 (1964) gives the historical background which negates the proposition that anything other than proportional representation is inherently wrong and unconstitutional. Excerpts are quoted from the debates which took place in the Constitutional Convention of 1787, where such notables as Johnson, Madison, Mason, Peterson, Randolph and Franklin made an accommodation known as the Great Compromise. The result is that the members of one house of our national legislative branch of government, the Senate, is composed of two persons from every State, the most sparsely populated as well as the most populated.
This cannot be done on the state level, however. In Reynolds v. Sims, 377 U.S. 533, 84 S.Ct. 1362, 12 L.Ed.2d 506 (1964) the Supreme Court held that "seats in both houses of a bicameral legislature must be apportioned on a population basis." (p. 1385). It went on to quote from Gray v. Sanders, supra, concerning the disparity between the constitutional makeup of state and federal legislative bodies, viz.:
"We think the analogies to the electoral college, to districting and redistricting, and to other phases of the problems of representation in state or federal legislatures or conventions are inapposite. The inclusion of the electoral college in the Constitution, as the result of specific historical concerns, validated the collegiate principle despite its inherent numerical inequality..."
(Footnotes omitted)
In Williams v. Virginia State Board of Electors, 288 F.Supp. 622 (E.D.Va.1968), aff'd. mem., 393 U.S. 320, 89 S.Ct. 555, 21 L.Ed.2d 516 (1969), the court, in refuting the argument that the unit rule is impermissibly discriminatory, said, at page 627:
"In the election of electors the [unit] rule does not in any way denigrate the power of one citizen's ballot and heighten the influence of another's vote. Admittedly, once the electoral slate is chosen, it speaks only for the element with the largest number of votes. This in a sense is discrimination against the minority voters, but in a democratic society the majority must rule, unless the discrimination is invidious."
Members of the House of Representatives may be elected at large. 2 U.S.C. §§ 2a and 2c. The Court in Williams, supra at 628, said that if that plan were in violation of *461 the one person-one vote principle, Congress presumably would not have adopted it; and if it is "legally permissible in the selection of Congressmen, it may hardly be stigmatized as unlawful in choosing electors."
In Graham v. Fong Eu, 403 F.Supp. 37 (N.D.Cal.1975), aff'd. 423 U.S. 1067, 96 S.Ct. 851, 47 L.Ed.2d 80 (1976), the Williams case was cited in support of the court's conclusion in the analogy between a statewide primary and the universal practice of electing presidential electors on a statewide winner-take-all basis. The court also pointed out that since before 1900, all States have used the winner-take-all method of election of electors.
See also Delaware v. New York, 385 U.S. 895, 87 S.Ct. 198, 17 L.Ed.2d 129 (1966) wherein the winner-take-all method of choosing presidential electors was challenged in the Supreme Court by 13 states in a suit against the other 37 states and the District of Columbia. The plaintiffs asked, inter alia, that electors be chosen from districts. The Supreme Court refused to entertain the suit.
We see, therefore, that pertinent statutes similar to our own have withstood the test of constitutionality.
We find that the statutes attacked by the appellant are constitutional.
For the reasons assigned, the judgment of the trial court is affirmed at appellant's cost.
AFFIRMED.
COLE, J., concurs in the result but would maintain appellee's peremptory exception raising the objection of no cause of action.
CHIASSON and LEAR, JJ., concur for reasons assigned by COLE, J.