468 So.2d 1246 (1985)
WHITNEY NATIONAL BANK OF NEW ORLEANS
v.
POYDRAS CENTER ASSOCIATES and HCB Contractors.
No. CA-2649.
Court of Appeal of Louisiana, Fourth Circuit.
April 9, 1985.
*1247 Bat P. Sullivan, Jr., Jerry A. Brown, James R. Morton, Monroe & Lemann, New Orleans, for appellant.
Danny G. Shaw, David J. Krebs, Phelps, Dunbar, Marks Claverie & Sims, New Orleans, for appellee Poydras Center Associates.
Gary M. Zwain, Johnston & Duplass, New Orleans, for appellee HCB Contractors.
Before KLEES, LOBRANO and WILLIAMS, JJ.
LOBRANO, Judge.
Whitney National Bank (Whitney) appeals the lower court decision denying its request for a preliminary injunction against Poydras Center Associates (P.C.A.) and H.C.B. Contractors (H.C.B.). Whitney asserts two issues for our consideration. First, it alleges that it is entitled to an injunction prohibiting P.C.A. and H.C.B. from trespassing or invading the air space of Whitney's property. Second, it asserts that the trial court erred in not granting a hearing for a permanent injunction.
The facts giving rise to this litigation are as follows. H.C.B. was the general contractor for P.C.A. in connection with construction of a twenty-seven story office building known as the Poydras Center Plaza located on property adjacent to property owned by Whitney. On June 3, 1983, approximately a year and one-half after construction started, Whitney obtained a temporary restraining order (TRO) enjoining, restraining and prohibiting H.C.B. and P.C.A. "... from trespassing on either the surface, subsurface or air rights ..." of Whitney's property by the "... use of cranes, dust or any other instrumentality or substance intruding on, under or over..." said property. On June 9, 1983, pursuant to a motion to dissolve said order, the lower court amended the TRO by appointing a special master to supervise the construction activities of Poydras Center, and required H.C.B. and P.C.A. to conduct all sandblasting activities in a manner conforming to the safety regulations of the Louisiana Air Control Law and the building code of the City of New Orleans. The purpose of this appointment by the trial court was to oversee the activities of the contractor and to monitor the situation at the construction site as the work progressed.
The hearing on the preliminary injunction began on June 17, 1983, and was heard on a piecemeal basis thereafter due to conflicting court schedules and summer vacation periods. The subsequent hearing dates were July 18, 1983, September 12, 1983, September 13, 1983, September 15, 1983, September 21, 1983 and November 4, 1983. The trial court rendered judgment December 22, 1983. The TRO was extended after each hearing until the judgment was rendered.
A careful review of the record convinces this Court that the trial court acted properly in issuing the TRO, and extending it throughout the proceedings. The evidence is overwhelming that during the construction of Poydras Center there was more than an inconvenience to Whitney, its customers and the public in general. Without elaborating in detail the evidence presented the trial court, suffice it to say that there were numerous instances of metal objects falling from the building causing serious property damage to vehicles in the Whitney parking lot, as well as physical injury to a small child. The record is replete with instances of cement being dropped on cars, pieces of steel falling through car windshields, serious accumulations of dust and debris on the Whitney property, bottles and pieces of reinforcing rods being thrown from the upper floors of the building and insulation bags and other items being *1248 dropped. The trial court's action in appointing a special master to oversee the operations, we feel, was most appropriate under the circumstances.
The record is equally convincing, however, that those activities which formed the basis of Whitney's request for a preliminary injunction were all related to the construction of the Poydras Center. The evidence is clear that at the time of the final hearing in this matter, the building had been completely enclosed on the Whitney side, all cranes had been removed, all sandblasting work had been completed, all exterior concrete work was finished, and the only remaining work to be done was interior work. H.C.B. and P.C.A. representatives all testified that they saw no future need to invade Whitney's airspace, nor would there be need for any instrumentality, whether a crane or otherwise, to trespass on Whitney's property.
The trial court concluded in its reasons for judgment that since the activity which caused Whitney to seek an injunction had ceased the issue was moot and therefore there was no need to issue the injunction. The trial court also reasoned that the continuing request by Whitney for an injunction against trespass of its airspace had no merit because Civil Code Article 668[1] permits a person to "inconvenience" his neighbor with the work undertaken on his property.
It is well established that appellate courts will not render advisory opinions from which no practical results can follow. United Teachers of New Orleans v. Orleans Parish School Board, 355 So.2d 899 (La.1978). As a result, Courts have established the rule that moot questions will not be considered on appeal. State ex rel Guste v. Louisiana Commission, 297 So.2d 750 (La.App. 1st Cir.1974). So strong is this prohibition that an appellate Court, as a matter of judicial economy, has a right to consider the possibility of mootness on its own motion and to dismiss the appeal if the matter has become moot. Aucoin v. Evangeline Parish Police Jury, 338 So.2d 789 (La.App. 3rd Cir.1976); Cain v. Board of Supervisors, Ouachita Parish, 335 So.2d 711 (La.App. 2nd Cir.1976).
In cases of injunctive relief, it is clear that when the activity which a plaintiff seeks to enjoin has already occurred during the pendency of the suit, the matter is moot and the propriety of the trial court's action in denying or granting the injunction will not be considered by the reviewing court. City Stores v. Gervois F. Favrot Co., Inc., 315 So.2d 370 (La.App. 4th Cir.1975), writ denied 320 So.2d 557; Boothe v. Board of Supervisors of Elections for the Parish of Catahoula, 341 So.2d 1297 (La.App. 3rd Cir.1977).
This rule was succinctly stated by our Supreme Court in Verdun v. Scallon Brothers Contractors, Inc., 263 La. 1073, 270 So.2d 512 (1972). In that case an injunction was sought to prevent a contractor from trespassing on plaintiff's property to remove soil for the purpose of repairing an adjacent levee. By the time the Supreme Court considered the matter, all construction activities had ceased. The Court dismissed the appeal stating:
"In such circumstances, the matter is now moot, as this court will not review a case where only injunctive relief is sought when the need for that relief has ceased to be a justiciable issue. Injunction, may be used to prevent but not to correct the wrong; it cannot be employed to redress an alleged consummated wrong or undo what has already been done." Id. 270 So.2d at 513.
This logic has been followed by this Court in Sobolewski v. Brown, 405 So.2d *1249 1254 (La.App. 4th Cir.1981) in which subdivision property owners sought to enjoin another owner from constructing a home in violation of subdivision building restrictions. During pendency of the appeal, the construction was completed. In dismissing the appeal we stated:
"Our jurisprudence has firmly established that when an appeal is taken from an order denying injunctive relief, and the act sought to be enjoined is accomplished pending appeal, the appeal will be dismissed as moot ..."
* * * * * *
"Since the building is now constructed, there is nothing for this court to enjoin; in this appeal it is impossible for us to undo what already has been done; and only abstract propositions, from which no practical result can follow, are left for our decision. It is against the long established judicial policy of this state not to render such advisory opinions." Id. at 1255, 1256.

See also, Upper Audubon Association v. Audubon Park Commission, 329 So.2d 209 (La.App. 4th Cir.1976); writ denied 333 So.2d 240.
Whitney cannot seriously argue that they are entitled to enjoin construction activities that have now ceased. However, they do forcefully argue that they are entitled to an injunction against future invasion or trespass of their air space. They cite Civil Code Article 477 which provides:
"Ownership is the right that confers on a person direct, immediate and exclusive authority over a thing. The owner of a thing may use, enjoy and dispose of it within the limits and under the conditions established by law."
They also argue that a party seeking to enjoin a trespass need not show damage or irreparable harm, citing Adcock v. Marshall Exploration, 434 So.2d 471 (La.App. 2nd Cir.1983) and Caffery v. Powell, 320 So.2d 223 (La.App. 3rd Cir.1975). We agree with Whitney that where a trespass is sought to be enjoined there need not be a showing of damage or harm. However, a reading of the above cited cases, as well as others cited by Whitney, clearly show in each instance, that either a trespass was occurring at the time of trial, or there was sufficient evidence to indicate that a future trespass was imminent. In the instant case there is no evidence proving the possibility of a future trespass, thus the need for an injunction has not been shown.
We do not intend to imply by this opinion that Whitney or anyone else may not seek an injunction in the future should the circumstances warrant. However, under the facts as presented to this Court, none is warranted. We do not decide, nor render an opinion on the issues raised concerning the applicability of Civil Code Article 668 as it applies to invasion of air space, or the so-called "right of abuse" argument raised in P.C.A.'s brief as the facts do not require us to do so.
Whitney also raises the argument that it was entitled to a hearing on a permanent injunction even though it was denied a preliminary injunction. Although the jurisprudence is clear that a preliminary injunction hearing cannot be converted to a permanent injunction hearing absent a stipulation of the parties to the contrary, Springlake Homeowners Association, Inc. v. Pecot, 321 So.2d 789 (La.App. 4th Cir.1975), it is equally well established that where a judgment denying a preliminary injunction after a hearing on the rule also passes on the merits of the case and effectively disposes of all issues presented by the pleadings, such judgment is a final judgment. Southwest Sales and Mfg. Co. v. Delta Express, Inc., 342 So.2d 281 (La. App. 3rd Cir.1977), and the cases cited therein. See also, La.C.C. Pro. Art. 1841 and State ex rel. Guste v. City of New Orleans, 363 So.2d 678 (La.1978).
A review of the record in this case clearly shows that the merits of all issues raised by the pleadings were fully tried, briefed and argued. Certainly if Whitney had any further evidence to support their claim it would have been presented. We see no reason to remand for a hearing on the *1250 issues that have already been decided by the lower court and this Court.
We do not consider Whitney's appeal frivolous and therefore deny any relief to P.C.A. and H.C.B. on their cross appeal.
We do note in the signed judgment issued by the lower court that the temporary restraining order was recalled and vacated. We conclude that the wording "recalled and vacated" may imply that the TRO should never have been issued. We are convinced that the trial court never intended such an interpretation, and therefore we amend that portion of his judgment to read as follows:
IT IS ORDERED, ADJUDGED AND DECREED that the temporary restraining order previously issued in these proceedings against Poydras Center Associates and H.C.B. Contractors is hereby terminated.
In all other respects the judgment below is affirmed. Both parties to share equally in the costs of this appeal.
AMENDED AND AS AMENDED AFFIRMED.
NOTES
[1] Article 668 provides:

"Although one be not at liberty to make any work by which his neighbor's buildings may be damaged, yet every one has the liberty of doing on his own ground whatsoever he pleases, although it should occasion some inconvenience to his neighbor.
Thus he who is not subject to any servitude originating from a particular agreement in that respect, may raise his house as high as he pleases, although by such elevation he should darken the lights of his neighbors's [neighbor's] house, because this act occasions only an inconvenience, but not a real damage."